970 So.2d 1045 (2007)
Stacey HOLLEY and Patrick Holley
v.
TOTAL REHAB OF BATON ROUGE, LLC, Sullen Cloudet, P.T., and J. Gregory Ward, M.D.
No. 2006 CA 2146.
Court of Appeal of Louisiana, First Circuit.
September 19, 2007.
Writ Denied December 14, 2007.
*1046 Richard J. Guidry, Jeffrey A. Mitchell, New Orleans, Counsel for Plaintiffs/Appellants Stacey Holley and Patrick Holley.
Joseph G. Glass, Metairie, Counsel for Defendant/Appellee Sullen Cloudet, P.T.
Before: GAIDRY, McDONALD, and McCLENDON, JJ.
GAIDRY, J.
In this suit for damages, the plaintiffs appeal a judgment dismissing their claims against one defendant with prejudice for prescription. We affirm.

FACTS AND PROCEDURAL HISTORY
This suit for damages arose from Stacey Holley's claim that she sustained a serious neck injury due to malpractice committed by her physical therapist, Sullen Cloudet. Mrs. Holley first underwent an MRI of her cervical spine on October 4, 2001 due to her complaints of pain between her shoulder blades. The MRI revealed a C6-7 central disc herniation, and her treating physician, Dr. J. Gregory Ward, prescribed physical therapy at Total Rehab of Baton Rouge, L.L.C.
On October 25, 2001, Mrs. Holley reported for physical therapy at Total Rehab, bringing with her the prescription from Dr. Ward. At this appointment, Mrs. Holley was examined by Mr. Cloudet and then underwent cervical traction and an ultrasound of her upper back. Mrs. Holley testified that she experienced a stinging sensation during the ultrasound, which the ultrasound technician told her was normal. After the therapy session ended, she made an appointment for the next day. When she woke up the next morning, her neck, which had never hurt prior to that morning, was "killing" her. When she arrived at Total Rehab for her therapy appointment, she told the therapist[1] that her neck was hurting. Mrs. Holley testified that the therapist told her that it was probably due to the exercises that had been done during therapy the day before. The therapist massaged her neck with a machine and applied ice to it and then performed another ultrasound. Mrs. Holley never returned to physical therapy after her October 26, 2001 session.
A little over a year after her last physical therapy session, Mrs. Holley sought treatment for her persistent neck pain with Dr. Charles Eberly on November 11, 2002. In a letter to the referring doctor, Dr. Eberly states the following regarding Mrs. Holley's history:
She has been experiencing some mid scapular pain and episodic paresthesias in this region following starting some physical therapy for this. She noted the acute onset of some lower neck pain. She states that this began following being placed on a cervical traction machine. . . . [T]he neck discomfort had been present for about the past year. . . . She only had the one treatment *1047 of physical therapy, where she feels that it was felt that her symptoms were exacerbated with cervical traction.
Mrs. Holley testified that she told Dr. Eberly that she had no neck pain prior to physical therapy and she felt that "something happened" at physical therapy that caused her neck pain. Dr. Eberly ordered an MRI, after which he recommended surgery. Mrs. Holley testified that she saw several doctors before ultimately deciding to have surgery. On patient history forms completed on December 12, 2002 and January 15, 2003, in response to the question "How did this problem begin?," Mrs. Holley wrote "After PT Last October" and "After visit to Physical Therapy."
In December 2002 or January 2003, Mrs. Holley contacted Total Rehab and asked to see her records. When she received the records, she became suspicious that she "had been given the wrong therapy," which caused her injury. Mrs. Holley testified that she is a respiratory therapist by training and that she felt, after reviewing the records, that Mr. Cloudet committed malpractice.
Mrs. Holley filed a request for a medical review panel on October 27, 2003, alleging that Total Rehab, Mr. Cloudet, and Dr. Ward committed acts of medical malpractice which caused a significant worsening of her disc herniation that required surgery. After being notified on December 19, 2003 that the defendants were not qualified healthcare providers under the Louisiana Medical Malpractice Act, she and her husband, Patrick Holley, filed suit against the three defendants on February 6, 2004.[2]
Mr. Cloudet filed an exception raising the objection of prescription on May 5, 2006, asserting that the plaintiffs' claims arising out of his October 25, 2001 treatment of Mrs. Holley were prescribed. Mrs. Holley argued that her claims were not prescribed because she did not begin to suspect that malpractice had occurred until she received the December 2002 MRI results and reviewed her records from Total Rehab.
After a hearing, the trial court granted the exception and dismissed the plaintiffs' claims against Mr. Cloudet with prejudice. This devolutive appeal by the Holleys followed.

DISCUSSION
The prescriptive period for medical malpractice is:
one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
La. R.S. 9:5628.
The supreme court discussed the application of this statute in Campo v. Correa, 01-2707 (La.6/21/02), 828 So.2d 502, 510-11:
Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of *1048 same. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start running of prescription. Nevertheless, a plaintiff's mere apprehension that something may be wrong is insufficient to commence the running of prescription unless the plaintiff knew or should have known through the exercise of reasonable diligence that his problem may have been caused by acts of malpractice. Even if a malpractice victim is aware that an undesirable condition has developed after the medical treatment, prescription will not run as long as it was reasonable for the plaintiff not to recognize that the condition might be treatment related. The ultimate issue is reasonableness of the patient's action or inaction, in light of his education, intelligence, the severity of the symptoms, and the nature of the defendant's conduct. (Citations omitted)
Although the Holleys' claim against Mr. Cloudet was filed more than one year from the date of the alleged malpractice, it was filed within one year of the date they alleged Mrs. Holley discovered that her injury may have been related to the physical therapy and within three years of the date of the alleged malpractice. Because Mrs. Holley is attempting to rely on the "discovery rule" contained in La. R.S. 9:5628, the heart of the trial court's inquiry was the reasonableness of the her action or inaction. Reasonableness is a factual determination which an appellate court cannot disturb, absent a finding of manifest error. Stansbury v. Accardo, 03-2691 (La.App. 1 Cir. 10/29/04), 896 So.2d 1066, 1070, writ denied, 04-2898 (La.2/4/05), 893 So.2d 881.
In ruling on the exception of prescription, the trial judge found that:
[I]t was unreasonable for [Mrs. Holley] to wait as long as she did. I'm of the opinion that she knew what was the cause of the problem because she told the doctor what the cause of the problem was and she said she and the doctor discussed that.
Considering Mrs. Holley's own testimony, as well as her medical records, specifically her notes on the patient history forms as to the source of her problem, we cannot conclude that the trial judge was manifestly erroneous in finding that Mrs. Holley should have known, through the exercise of reasonable diligence, that her problem may have been caused by an act of malpractice.

DECREE
The judgment of the trial court granting Sullen Cloudet's exception raising the objection of prescription and dismissing the plaintiffs' claims against him with prejudice is affirmed. Costs of this appeal are to be borne by the plaintiffs.
AFFIRMED.
NOTES
[1] Mrs. Holley could not remember whether Mr. Cloudet was her therapist at the second session, or if she saw someone else.
[2] Dr. Ward was in fact a qualified health care provider, and the claims against him were dismissed without prejudice on May 5, 2004.